**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER REGER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-4624 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| ALBERT BEASON and MAGNUM, LTD., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Early one morning, Chris Reger went out for a jog in the small town of Mokena, Illinois. Meanwhile, Albert Beason, an out-of-state truck driver, was in the process of trekking across the country in his fully-loaded Peterbilt semi-truck. As fate would have it, Beason's journey brought him through the streets of Mokena.

Reger trotted along and crossed the street. And for whatever reason, disaster struck. Beason hit Reger with his semi-truck, and Reger suffered serious injuries.

Reger sued Beason and the trucking company, Magnum Ltd. In response, Beason moved to dismiss for lack of personal jurisdiction, citing the rarely-invoked-and-even-more-rarely-successful fiduciary-shield doctrine. Beason believes that he shouldn't have to defend himself in Illinois for hitting an Illinois pedestrian on an Illinois street.

For the reasons stated below, the motion to dismiss is denied.

### Background

At the motion-to-dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020). However, in deciding a motion to dismiss for lack of personal jurisdiction, the Court can consider facts outside the pleadings. *See Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020); *see also Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019).

Albert Beason drove a semi-truck for Magnum, Ltd. One of Beason's trips took him to the Land of Lincoln. *See* Cplt., at ¶ 5 (Dckt. No. 1-1). On May 25, 2022, Beason and his truck passed through Mokena, Illinois. *Id.* He drove a large, heavy vehicle – a 2019 Peterbilt 579 semi-truck with an attached, fully-loaded trailer. *Id.*

Chris Reger was out for a jog that same morning. *Id.* at ¶ 9. He crossed the street, but didn't make it across safely. Beason hit Reger with the truck, and Reger got badly hurt. *Id.* at ¶¶ 9, 13. The complaint doesn't offer any additional details, but it's hard to imagine that there are any non-serious collisions between semis and pedestrians.

Reger sued Beason and Magnum in Illinois state court. Defendants removed the case to federal court. *See* Notice of Removal (Dckt. No. 1).[1]

Beason moved to dismiss for lack of personal jurisdiction based on the fiduciary-shield doctrine. *See generally* Mtn. to Dismiss (Dckt. No. 19).

## Legal Standard

When considering a motion to dismiss for lack of personal jurisdiction, a district court must "read the complaint liberally, in its entirety, and with every inference drawn in" the plaintiff's favor. *Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (citation omitted). Additionally, a district court can consider matters outside of the pleadings. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

A plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.*; *see also Curry*, 949 F.3d at 393. When it comes to factual matters, the tie goes to personal jurisdiction.

A district court must hold an evidentiary hearing when personal jurisdiction turns on the resolution of a dispute about material facts. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). But here, none of the parties point to any material facts in dispute. The parties gave this Court no reason to hold an evidentiary hearing, so it won't hold one. *Id.*; *see also Harbor Grand, LLC v. EMCASCO Ins. Co.*, 2022 WL 4079436, at *1 (N.D. Ill. 2022) (declining to hold an evidentiary hearing because there were no material factual disputes); *Urban 8 Danville Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 2020 WL 3058101, at *2 n.4 (N.D. Ill. 2020) (same).

The party asserting personal jurisdiction – here, Reger – bears the burden of proof. *See Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). When a court resolves a motion to dismiss for lack of personal jurisdiction based on the briefs, without an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Purdue Rsch. Found.*, 338 F.3d at 782 (citation omitted); *see also Hyatt Int'l Corp.*, 302 F.3d at 713.

---

[1] Defendants invoke this Court's diversity jurisdiction. *See* Civil Cover Sheet (Dckt. No. 2). Reger is an Illinois resident, and Beason is an Oklahoma resident. *See* Cplt., at ¶¶ 1–2 (Dckt. No. 1-1). Magnum is a North Dakota corporation. *See* Mtn. to Dismiss, at ¶ 4 (Dckt. No. 19).

**Analysis**

Beason moved to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).

Illinois allows personal jurisdiction to the extent "permitted by the Illinois Constitution and the Constitution of the United States." *See* 735 ILCS 5/2-209(c). So, the requirements under the state statute and the federal Constitution "merge." *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010); *see also Tekway, Inc. v. Agarwal*, 2020 WL 5946973, at *4 (N.D. Ill. 2020).

The Due Process Clause permits a court to exercise personal jurisdiction if the defendant has purposefully established "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). The minimum contacts must not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Here, the Due Process Clause allows the Court to exercise personal jurisdiction over Beason. Getting into a car crash in a state is the quintessential minimum contact with that state. A car accident is a literal and a metaphorical contact.

Oftentimes, a defendant will challenge personal jurisdiction on constitutional grounds, arguing that he is out of reach under the Due Process Clause. That's not the argument here.

Instead, Beason invokes the so-called fiduciary-shield doctrine. The fiduciary-shield doctrine is a quirky "matter of state law only," and does not flow from the Due Process Clause. *See Hardin Roller Corp. v. Universal Printing Mach., Inc.*, 236 F.3d 839, 842 (7th Cir. 2001). So even when "federal due process would permit the court's exercise of personal jurisdiction over a defendant, the fiduciary shield doctrine may nevertheless preclude it" under Illinois state law. *See Fletcher v. Doig*, 125 F. Supp. 3d 697, 716 (N.D. Ill. 2014) (Feinerman, J.).

In effect, the fiduciary-shield doctrine shortens the reach of the Illinois long-arm statute. Most of the time, when it comes to personal jurisdiction, Illinois law allows whatever the Due Process Clause allows. If it's good enough for the Constitution, it's good enough for Illinois. But not always. The fiduciary-shield doctrine is an exception.

The Illinois Supreme Court recognized the fiduciary-shield doctrine more than three decades ago. The fiduciary-shield doctrine "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." *See Rice*, 38 F.3d at 912. The doctrine shields nonresident employees from personal jurisdiction when they are in Illinois "not to serve [their] personal interests, but to serve those of [their] employer or principal." *See Rollins v. Ellwood*, 565 N.E.2d 1302, 1318 (Ill. 1990).

3

The Illinois Supreme Court explained that it would be "unfair and unreasonable, under Illinois' due process clause and the tenets of our concept of the jurisdictional power of the Illinois courts, to assert personal jurisdiction over an individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal." *Id.*

The doctrine is "based upon the notion that it is unfair to subject a corporate employee personally to suit in a foreign jurisdiction when his only contacts with that jurisdiction have been undertaken on behalf of his corporate employer." *See Kreutter*, 522 N.E.2d at 44 (applying New York law).

The poorly-named doctrine makes it sound like it is limited to fiduciaries. But that's not quite right. Strictly speaking, the doctrine isn't limited to traditional "fiduciaries," like directors or corporate officers. *See Rollins*, 565 N.E.2d at 1318. Instead, the doctrine sometimes extends to ordinary employees, even those "who engage in tortious conduct within the scope of their employment." *Id.*

The fiduciary-shield doctrine is still hanging around, but it doesn't appear to be long for this world. By the look of things, the fiduciary-shield doctrine seems to be dying on the vine in the states that have adopted it. *See, e.g.*, *Kreutter*, 522 N.E.2d at 44 (renouncing federal and lower courts' application of the fiduciary-shield doctrine under New York law); *Columbia Briargate Co. v. First Nat. Bank in Dallas*, 713 F.2d 1052, 1055–77 (4th Cir. 1983); *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994).

New York courts created the fiduciary-shield doctrine in the 1960s, and since then, the New York courts have renounced it as unnecessary and unfairly prejudicial to plaintiffs. *See* Robert A. Koenig, "Personal Jurisdiction and the Corporate Employee: Minimum Contacts Meet the Fiduciary Shield," 38 Stan. L. Rev. 813, 820 (1986) ("The fiduciary shield rule arose through dicta in a series of New York cases in the 1960s."); *Kreutter*, 522 N.E.2d at 46 ("The equitable concerns which motivated development of the doctrine are amply protected by constitutional due process requisites . . . .").

In Illinois, the roots aren't particularly deep, and they look like they're drying up. The fiduciary-shield doctrine seems to be losing its foothold, in Illinois and across the country. Decades ago, Judge Posner referred to the doctrine as "much criticized" and "rejected" by "many jurisdictions." *See Rice*, 38 F.3d at 912. Its standing hasn't improved in the intervening decades.

For whatever reason, Illinois state courts don't seem as interested in keeping the doctrine alive as federal courts in Illinois. By the look of things, most of the case law about the doctrine in the past two decades comes from the federal courthouse.

The doctrine survives in Illinois, but courts have whittled it down by imposing a few limitations. *See Femal v. Square D Co.*, 903 N.E.2d 32, 37–38 (Ill. App. Ct. 2009) (detailing "various factors" that determine whether the doctrine applies); *Walls v. VRE Chicago Eleven, LLC*, 344 F. Supp. 3d 932, 953 (N.D. Ill. 2018); *Consumer Benefit Services, Inc. v. Encore Mktg. Int'l, Inc.*, 2002 WL 31427021, at *3 (N.D. Ill. 2002) (St. Eve, J.) ("Courts have recognized two

exceptions to the doctrine . . . .").  Under Illinois law, the doctrine is discretionary, too, meaning that a trial court enjoys equitable discretion.

The first limitation involves the employee's personal interest.  The doctrine does not apply when an employee acts in his own personal interest.  *See Walls*, 344 F. Supp. 3d at 953.  Personal interests can include any motivations of the employee – not just "pecuniary ones" – that aren't on the employer's behalf.  *See Rice*, 38 F.3d at 912.

Personal interests don't include an employee's basic self-interest in remaining employed.  *Id.*; *see also Rollins*, 565 N.E.2d at 280.  Every employee wants to keep his job (most of the time, anyway), so the shield would be meaningless if that personal interest counted as an exception.

The second limitation involves discretionary acts by the employee.  *See Walls*, 344 F. Supp. 3d at 953; *Femal*, 903 N.E.2d at 37–38.  Generally, when a nonresident employee acts with discretion, he doesn't get the shield.

The fiduciary-shield doctrine does not apply when "the employee has the power to decide what is to be done and chooses to commit the acts that subject him to long-arm jurisdiction."  *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1062–63 (N.D. Ill. 2013) (quoting *Brujis v. Shaw*, 876 F. Supp. 975, 978 (N.D. Ill. 1995)).

Courts haven't always been on the same page when it comes to the issue of discretionary acts by employees.  Some courts take a flexible approach, and leave the door open to the fiduciary-shield doctrine even if an employee exercised discretion.  *See, e.g., Rice*, 38 F.3d at 912 (suggesting that the shield applies even if employee "exercised discretion"); *Fletcher*, 125 F. Supp. 3d at 718–19 ("[E]xercis[ing] discretion . . . alone does not deprive [defendants] of the fiduciary shield."); *Femal*, 903 N.E.2d at 37–38 (listing "discretionary actions" as a relevant, non-dispositive factor) (quoting *Brujis*, 876 F. Supp. at 980).  Perhaps in dictum, the Seventh Circuit observed that employees can receive the shield even if they do more than "merely carry[] out [an employer's] precise orders mechanically."  *See Rice*, 38 F.3d at 912.

Other courts seem to view the existence of discretion as a bar to a claim.  *See, e.g., Brujis*, 876 F. Supp. at 978–79 (calling *Rice* "dictum" and finding that the "exercise of discretion removes" the shield); *Intercon Sols.*, 969 F. Supp. 2d at 1063 ("[C]ourts have held that 'discretionary action by the defendant alone is enough to negate the protection of the fiduciary shield.'") (quoting *Farmer v. DirectSat USA, LLC*, 2010 WL 380697, at *3 (N.D. Ill. 2010)).

Some courts have framed the issue of discretion by asking whether an employee's actions were "consistent with" an employer's instructions or "at the direction" of the employer.  *See Minemyer v. R-BOC Representatives, Inc.*, 2007 WL 2461666, at *6 (N.D. Ill. 2007) (noting fiduciary shield may protect employee "merely continuing to act in a manner *consistent with* the instructions of" employer) (emphasis added); *Receivership Mgmt., Inc. v. AEU Holdings, LLC*, 2019 WL 4189466, at *14 (N.D. Ill. 2019) (looking for, but not finding, evidence that defendant's negligent "forum-related activity was done *at the direction* of superiors" to justify fiduciary shield) (emphasis added); *Levin v. Posen Foundation*, 62 F. Supp. 3d 733, 742 (N.D.

Ill. 2014) (applying fiduciary shield when defendant "acted *at the direction*" of others) (emphasis added).

Maybe the existence of some employee discretion does not automatically prevent the application of the fiduciary-shield doctrine. But at the very least, it's a sliding scale. The more discretion an employee has, the less likely it is that the fiduciary-shield doctrine will apply.

The doctrine could use some fine-tuning when it comes to an employee's discretion. It's especially unclear how the discretion factor applies to employee torts, whether negligent or intentional.

One possible way to reframe the doctrine might involve focusing on the nature of the assignment from the employer. That is, maybe the fiduciary-shield doctrine applies when *the assignment itself* is the problem, not the employee's discretion in executing the assignment. An employee has a better argument against personal jurisdiction when the employer asked him to perform a tortious act.

For example, imagine if an out-of-state masonry company directs Bob to travel to Illinois and deposit a ton of bricks on the hood of Larry's Lamborghini. And imagine if Bob dutifully makes the deposit, and leaves Larry's favorite ride in shambles.

Maybe, just maybe, Bob could invoke the fiduciary-shield doctrine, because he simply did what the employer told him to do. The company told him to commit a tort, and he did it. The task itself was the problem, not the execution of the task by the employee.

The doctrine seems like a bigger stretch when the employee negligently performs a legitimate, benign task. For example, imagine if the same masonry company directed Bob to deliver a ton of bricks to the back of Larry's Chicagoland house for a new backyard fireplace. And imagine if Bob did the job, but he still managed to drop a ton of bricks on Larry's Lamborghini on the street out front.

That's a negligent execution of a legitimate task. In that situation, the employee himself is to blame, not the assignment. It's hard to see why the negligent employee should get the benefit of the fiduciary-shield doctrine.

At bottom, the fiduciary-shield doctrine rests on notions of fairness to the out-of-state employee. An employee has a better argument when the employee did exactly what the employer asked him to do.

If the employee didn't inject additional negligence into the situation, and can legitimately say that he was "simply doing his job," that employee has a stronger basis to argue a lack of personal jurisdiction. That employee doesn't contribute individual negligence into a corporate task. But if the execution of a legitimate task was the problem, it is hard to see why the fiduciary-shield doctrine should apply.

The case that first recognized the fiduciary-shield doctrine arguably involved an inherently problematic task. In *Rollins*, the Baltimore Police Department directed Sergeant Ellwood to travel to Illinois to extradite Ruchell Rollins, who was wanted on a warrant. They believed that a person in custody in East St. Louis was Ruchell Rollins, because he signed a waiver-of-extradition form and identified himself as "Sylvester Wayne Rollins, a/k/a Ruchell Rollins." *See Rollins*, 565 N.E.2d at 1305.

Sergeant Ellwood took custody of Rollins and shipped him to Baltimore. But as it turned out, the man in custody was Sylvester Rollins, and was not Ruchell Rollins (even though the waiver-of-extradition form suggested otherwise). So the Baltimore Police Department gave Sergeant Ellwood a faulty assignment. They told him to arrest a man, thinking than he was Person A, but in reality, the man was Person B.

One possible reading of *Rollins* is that the fiduciary-shield doctrine comes into play when the assignment itself is problematic. Even so, Illinois courts haven't expressly drawn that line. Illinois courts do not overtly focus on the nature of the assignment itself.

By the look of things, Illinois courts sometimes apply the fiduciary-shield doctrine even when an employee negligently performs a legitimate task. So maybe there is more trimming to do, if the doctrine continues to stick around at all.

The Illinois Supreme Court in *Rollins* did confirm that the fiduciary-shield doctrine can apply if the employee commits a tort. *Id.* at 1318 ("[W]e see no reason to fashion an exception to the fiduciary shield doctrine that will expose employees who engage in tortious conduct within the scope of their employment to the personal jurisdiction of Illinois courts."). The Illinois Supreme Court didn't elaborate on the difference between negligence and intentional torts. But in *Rollins*, one of the claims against Sergeant Ellwood was negligence.

So, as things stand, an out-of-state employee can commit a tort in Illinois and potentially receive the benefit of the fiduciary-shield doctrine. Under current Illinois law, the fact that an employee negligently performed a task is not a sufficient basis to withhold the fiduciary-shield doctrine. Maybe the Illinois Supreme Court will revisit that issue someday.

At the very least, the existence of discretion does matter. The more discretion an employee had, the less likely that the fiduciary-shield doctrine will apply.

Those two limitations – meaning the personal interests of the employee, and discretionary acts by the employee – reduce the footprint of the fiduciary-shield doctrine. But another consideration exists, too. It rests on the equities of the case.

A trial court has equitable discretion to decline to apply the fiduciary-shield doctrine, even when the two limitations do not apply. At bottom, the fiduciary-shield doctrine is an equitable doctrine, and a trial court has wide discretion when deciding whether to apply it.

"The fiduciary shield doctrine is discretionary, not absolute." *See Patel v. CBC Pharma Holdco LLC*, 2025 WL 972868, at *8 (N.D. Ill. 2025); *see also Rice*, 38 F.3d at 914 ("[T]he

doctrine is usually said to be discretionary or 'equitable,' rather than absolute."); *Sommese v. Am. Bank and Trust Co., N.A.*, 2012 WL 3006824, at *3 (N.D. Ill. 2012) ("Application of the doctrine is discretionary or equitable, not absolute."); *Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 912 (N.D. Ill. 2003) ("[T]he fiduciary shield doctrine is discretionary or 'equitable,' rather than an absolute entitlement, and should be applied only where equity demands it."); *Intercon Sols.*, 969 F. Supp. 2d at 1062–63.

The Illinois Supreme Court underscored the equitable nature of the fiduciary-shield doctrine when it gave its blessing to the doctrine decades ago. Again, the doctrine ensures that courts exercise personal jurisdiction "only when it is *fair, just, and reasonable* to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *See Rollins*, 565 N.E.2d at 1316 (emphasis added); *Femal*, 903 N.E.2d at 38; *Brujis*, 876 F. Supp. at 979.

In short, courts have equitable discretion to decide whether personal jurisdiction – or, conversely, the fiduciary shield – is "fair, just, and reasonable" in a particular case. *See Rollins*, 565 N.E.2d at 1316. When the Illinois Supreme Court adopted the doctrine, the "concern for fairness" was "uppermost in our mind." *Id.*

Putting it all together, the fiduciary-shield doctrine potentially applies to an out-of-state defendant who performed an act in Illinois at the direction of his employee. The doctrine does not apply when the employee only pursued his own self-interest, and frequently does not apply to discretionary acts by the employee. And above all else, a trial court has equitable discretion and can decline to apply it.

This Court declines to apply the fiduciary-shield doctrine here.

Beason does meet the threshold requirements for the fiduciary-shield doctrine. Beason is a nonresident, and he was in Illinois on behalf of his employer, Magnum. *See* Cplt., at ¶¶ 5–6 (Dckt. No. 1-1); *Rice*, 38 F.3d at 912. And again, the doctrine potentially can apply even though the claim involves a tort. *See Rollins*, 565 N.E.2d at 1318.

The first limitation, the personal interest exception, doesn't come into play. Beason rode through Illinois as a truck driver for his company. He wasn't pursuing any personal interests at the time of the accident, other than doing his job.

The second limitation, for discretionary acts by the employee, poses a bigger problem for Beason. Driving through Illinois may not have been a discretionary act. But Beason did enjoy plenty of discretion when it came to how he drove. After all, his hands were on the wheel, and his foot was (or was not) on the brakes.

Beason controlled whether to pay attention, and whether to watch what he was doing. Beason didn't have discretion about whether to drive, but he *did* have discretion about whether he drove carefully. That act was within his control. Beason "ha[d] the power to decide [how to drive his truck] and [chose] to commit the acts that subject[ed] him to long-arm jurisdiction." *See Intercon Sols.*, 969 F. Supp. 2d at 1063 (quoting *Brujis*, 876 F. Supp. at 978).

Beason didn't have *general* discretion over his actions in Illinois. But he did have *specific* discretion and autonomy over the manner of his driving. It was up to Beason to control his truck and avoid hitting pedestrians. Beason's negligence, not Magnum's instructions, caused the accident.

The nature of the assignment itself wasn't to blame. After all, driving through the Land of Lincoln isn't a tort. Instead, the accident happened because the employee carried out the employer's assignment in a negligent way.

The Illinois Court of Appeals cemented the point in a case involving a train accident. *See Renner v. Grand Trunk Western Railroad Company*, 641 N.E.2d 1, 1–3 (Ill. App. Ct. 1994). There, a nonresident train engineer chugged down the tracks in Illinois, and entered this state solely to serve his employer, a railroad company. Unfortunately, the engineer negligently caused the train to strike and injure the plaintiff. *Id.*

The *Renner* court found personal jurisdiction because the engineer's conduct was not "compelled" by his employer. *Id.* The engineer didn't have "extremely limited discretion" as a part of "a paramilitary organization with a chain of command," like a police department. *Id.* [2] Instead, he worked for a railroad, and was driving the train. His relevant acts fell within his control as "negligence by a nonresident occurring during normal commercial activity in Illinois." *Id.*

The engineer in *Renner* had substantial discretion over how he did his job, meaning how he operated his train. *Id.* In a similar vein, Beason had substantial discretion over how he drove the truck.

The case that recognized the fiduciary-shield doctrine falls on the other end of the spectrum. In *Rollins*, a police officer from Maryland came to Illinois and arrested Rollins. The arrest was the assignment from the employer. And that act itself was tortious because it constituted kidnapping and false imprisonment.

In *Rollins*, the employer directed the employee to do something, and the act itself was a tort. The assignment *itself* was the problem, not how the employee carried it out.

That's not the situation here. Again, driving through Illinois isn't a tort. But driving into a pedestrian is. Magnum didn't give Beason an assignment to commit a tortious act. Beason carried out a non-tortious assignment in a tortious manner.

The question is not whether the employee acted within the scope of employment. After all, employees often act within the scope of employment even when they commit torts. *See*

---

[2] Some later courts have disagreed with *Renner*'s "compelled" and "paramilitary" language and allowed employees with more discretion to benefit from the fiduciary shield. *See Renner*, 641 N.E.2d at 3; *Femal*, 903 N.E.2d at 37–38 (rejecting *Renner*'s restrictive framing but still including discretion as factor); *Fletcher*, 125 F. Supp. 3d at 718. But, these courts haven't undermined *Renner*'s finding of personal jurisdiction on its facts.

*Ramzan v. United States*, 438 F. Supp. 3d 871, 877 (N.D. Ill. 2020); *Covarrubia v. Wendy's Properties, LLC*, 2022 WL 1238666, at *6–9 (N.D. Ill. 2022); *Martin v. Union Pacific Railroad Co.*, 663 F. Supp. 3d 833, 851 (N.D. Ill. 2023) ("Consider, by way of example, a car accident by a delivery driver. A delivery company might prohibit its drivers from getting into accidents, but that prohibition would not make the accident outside the scope of employment. It would not matter if the company prohibited negligence – the driving would be within the scope of employment, even if the driver was going a little too fast to deliver a package.").

Acting within the scope of employment isn't the issue. The Illinois Supreme Court in *Rollins* explicitly allowed the fiduciary-shield doctrine to apply to "tortious conduct within the scope [of employment]." *See Rollins*, 565 N.E.2d at 1318.

Taking a step back, applying the fiduciary-shield doctrine in this case would vastly expand the doctrine, which appears to be on a downward trajectory. It would inject new life into a dying doctrine. This Court has located no cases – and the parties have cited none – that applied the fiduciary-shield doctrine to a run-of-the-mill tort like this one.

Maybe Illinois courts will expand their fiduciary-shield doctrine to cover common torts of negligence like car crashes. But that isn't the job of a federal court. The Seventh Circuit "consistently ha[s] held that 'it is not our role to break new ground in state law.'" *See Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 596 (7th Cir. 2017) (quoting *Lopardo v. Fleming Cos., Inc.*, 97 F.3d 921, 930 (7th Cir. 1996)); *see also Hernandez v. Illinois Inst. of Tech.*, 63 F.4th 661, 672 (7th Cir. 2023) (St. Eve, J., concurring) ("As a federal court sitting in diversity, it is not our place to expand the limits of state law.").

Strictly speaking, the fiduciary-shield doctrine isn't limited to fiduciaries. But most of the cases do involve more traditional "fiduciaries," like corporate officers, directors, lawyers, and the like acting as representatives of a corporation or other entity. *See, e.g.*, *Int'l Fin. Servs. Corp. v. Didde Corp.*, 2002 WL 398513, at *2–4 (N.D. Ill. 2002) (explaining fiduciary-shield doctrine protects "individual[s] whose contacts with Illinois are solely the result of *acts as a representative or fiduciary of a corporation*" and applying doctrine to "high ranking [corporate] officers") (emphasis added) (citation omitted); *Consumer Benefit Servs., Inc.*, 2002 WL 31427021, at *2 (N.D. Ill. 2002) (St. Eve, J.) (explaining doctrine applies to "corporate official[s]" acting in "corporate capacity" and applying to (1) chief operating officer and (2) board member and president) (emphasis added) (quoting *Rice*, 38 F.3d at 912); *see also Urban 8 Danville Corp*, 2020 WL 3058101, at *1 ("sole [LLC] member" and asset manager); *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 711 (N.D. Ill. 2017) ("former CEOs" and "former Vice President of Business Development"); *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 848 (N.D. Ill. 2009) ("President of the corporation"); *Femal*, 903 N.E.2d at 34 ("attorney").

By the look of things, there isn't any case law applying the fiduciary-shield doctrine to car accidents. Car accidents may not be the most common tort, but if not, they're in the team photo. Lots of car accidents happen in Illinois each year, and many of them involve out-of-state drivers. If the fiduciary-shield doctrine applied to out-of-state drivers, you would expect that some Illinois court would have said so by now.

The last remaining issue is an equitable one. This Court has discretion when it comes to applying the fiduciary-shield doctrine. In some tort cases, maybe the equities cry out for judicial intervention, to save an out-of-state defendant from the unfairness of it all. But this case isn't one of them.

It's hard to think of any good reason why Beason should receive protection from getting sued in Illinois simply because he was driving for a company. After all, the company wasn't driving the truck. *Beason* was.

Beason drove into Illinois and hit Reger with his semi-truck. The question is what is "fair, just, and reasonable." *See Rollins*, 565 N.E.2d at 1316. There is nothing unfair, unjust, or unreasonable about allowing Reger to sue Beason where Beason hit him with a truck. If anything, it would be unfair, unjust, and unreasonable to say that Reger must sue Beason on Beason's home turf, even though the accident happened here.

Reger shouldn't have to travel out of state to sue an out-of-stater who smacked into him here. On the flipside, there is nothing unfair about requiring Beason to defend himself where the accident took place. A truck driver who treks through the state and hits an Illinois pedestrian can make a pitstop at an Illinois courthouse.

At bottom, personal jurisdiction is about whether a defendant was here, and whether it would be unfair to sue that person in this forum. It's hard to see how an individual isn't here if that person has his hands on the wheel and plows his semi-truck into another person in Illinois. And it's hard to see why the good people of Illinois should lose the ability to sue people from 49 other states who come into the Prairie State and hit them with trucks.

## Conclusion

For the foregoing reasons, Defendant Beason's motion to dismiss is denied.

Date:   September 29, 2025

_____

Steven C. Seeger
United States District Judge